## Case No. 13,836.

### In re TERRY.

### [5 Biss. 110.] 1

District Court, N. D. Illinois.  Feb., 1870.

BANKRUPTCY — ACT OF — LIMITED PARTNERSHIP — HOW DISSOLVED.

1. It is not an act of bankruptcy on the part of one partner to influence or procure the departure of another from the state.

2. In Illinois, if the certificate of dissolution of a limited partnership does not fulfill the requirements of the statute, the partnership still continues, and such informal dissolution does not affect the rights of creditors.

In bankruptcy. This is a proceeding on the part of the creditors of the firm of Arbogast & Terry, to declare Lyman Terry, who was a special and limited member of said firm, a bankrupt, and subject his private property to the debts of said firm. The original petition was against Arbogast and F. P. Terry, and the petitioners then filed an amendment asking adjudication against Lyman Terry. To this amended petition Lyman Terry answered. It appeared that this special partnership was formed on the first of March, 1869, Arbogast contributing no money to the assets of the firm, but only undertaking to put in his skill in the art and business of manufacturing glass. The two Terrys put in $1,250 each, and Arbogast and F. P. Terry were the general partners. The proceedings to perfect this association as a limited partnership within the statutes of this state were admitted to be all regular, and under this law the special partner only became liable for the money put into the firm. It was admitted that Lyman Terry duly paid in his $1,250, and there was no evidence or pretence that he ever withdrew this capital. On the 20th of March the firm were greatly in need of money to pay their laborers, and Lyman Terry procured $1,500 by his own note to Page & Sprague, and advanced it to the firm, with an express understanding that he should be refunded out of the proceeds of the first glass got to market. There seems to be no dispute but that this money was paid and went into the affairs of the firm. On the 24th of March, steps were taken for the dissolution of this partnership. Arbogast took $125, and assigned his interest to F. P. Terry, and a stipulation for dissolution was entered into,

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

but no certificate was filed in the recorder's office, nor was the notice required by statute (1 Gross' St. p. 433, § 16) duly published. On the 30th of March, F. P. Terry, who had continued the control of the business of the firm after the attempted dissolution, was in want of more money, and applied to Lyman Terry for it. The application resulted in his obtaining from Lyman Terry the $2,000 he needed, he giving as security a bill of sale for 1,000 boxes of glass—465 of which were delivered on the 3d of April, and 60 boxes on the 6th of April, making 525 boxes in all —with an agreement that whatever the glass came to over the $2,000, should apply on the $1,500 advanced to the firm.

Hervey, Anthony & Galt, for petitioning creditors.

H. B. Hurd and John A. Hunter, for Lyman Terry.

BLODGETT, District Judge, charged the jury as follows:

It is insisted that the successive transactions between these partners make Lyman Terry guilty of the acts of bankruptcy provided for in the statute, which brings him within the clauses of the bankrupt act [of 1867; 14 Stat. 517]. The acts insisted upon as bringing him within the operation of these clauses, are: (1) Procuring the departure of Arbogast from the state. (2) Giving the judgment note with others to Booth. (3) The buying of the 1,000 boxes of glass on the 30th of March, and taking possession of the 525 boxes on the 3d and 6th of April.

As to the first of these grounds,—that of procuring the departure of Arbogast from the state,—I do not see how this can be held to be an act of bankruptcy on the part of Lyman Terry. It was such an act on the part of Arbogast. But that this act of Arbogast is to make Lyman Terry a bankrupt, I do not see, any more than it would any stranger, who had used his influence or advice to procure Arbogast's withdrawal from the firm.

The note given Booth, and used as a means, may have been a fraud on Arbogast, —may have deceived him,—but how are the creditors left any worse off? Arbogast put no money into the concern, and under the evidence it seems doubtful whether his services were of any value to them. At all events, the evidence shows that they lost money all the time he stayed, and only made money, if at all, after he left. But it is contended that the buying out of Arbogast was dictated by an honest regard for the interests of the firm.

We now come to the transaction of the 30th of March, when Lyman Terry let F. P. Terry have the $2,000 on the bill of sale of 1,000 boxes of glass. It is contended that at this time Lyman Terry was still a member of this firm, and that, owing to informalities in the proceeding in not filing the certificate of dissolution, the dissolution had not taken

effect as to creditors. I agree with the counsel for the creditors on this point, that the partnership still continued. But in my opinion this is no reason why Lyman Terry could not, if the transaction was fair, buy this glass. The business of the firm was to manufacture glass and sell it. This was their only resource from which to raise money to meet their daily expenditures. Lyman Terry had no interest in the firm save to the extent of the $1,250 capital he had put in. As to all other transactions, he could deal, buy and sell, like any third party.

Verdict against creditors, as to Lyman Terry.